IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., | |
| Plaintiff, | |
| v. | No. 1:14-cv-03365 |
| LIFETIME BRANDS, INC., and THE GREENFIELD GROUP LTD., | Honorable John W. Darrah |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT THAT BODUM IS PRECLUDED FROM BRINGING THIS LAWSUIT**

# ABBREVIATIONS

**Parties:**

"Bodum" shall mean Bodum USA, Inc.

"Lifetime" shall mean Lifetime Brands, Inc.

"Greenfield" shall mean The Greenfield Group Ltd.

"Defendants" shall mean Greenfield and Lifetime collectively.

**Defined Terms:**

"1991 Agreement" shall mean the agreement entered into by Bodum, Inc. and Société des Anciens Etablissements Martin S.A. on August 8, 1991.

"7th Cir. Op." shall mean *Bodum USA, Inc. v. La Cafetière, Inc.,* No. 08-1892 (7th Cir. Sept. 2, 2010).

"Bodum's Lawsuits" shall mean *Bodum USA, Inc. v. La Cafetière, Inc.*, No. 07 C 6302 (N.D. Ill. Mar. 24, 2009); *Bodum USA, Inc. v. La Cafetière, Inc.,* 621 F.3d 624 (7th Cir. 2010); *Pi-Design AD & Bodum A/S v/ Jj-Company ApS*, Danish Court of Randers, Case FS 40-6066/2007; *Pi-Design AD & Bodum A/S v/ Jj-Company ApS*, Western Danish High Court on May 12, 2009 (Appeal No. V.L. B-0329-08, Ref. No. 138212); *Household Articles Ltd. v. Bodum AG & PI-Design AG*, 310 O 13/12 District Court of Hamburg (Aug. 29, 2014), collectively.

"Accused Products" shall mean the "Classic" and "Optima" French presses.

"FAC" shall mean Bodum's First Amended Complaint in this action, Dkt. 56.

"Final Decision" shall mean *Bodum USA, Inc. v. La Cafetière, Inc*., No. 07 C 6302 (N.D. Ill. Mar. 24, 2009) (Dkt. 100).

"Household Articles" shall mean Household Articles Ltd., which later changed its name to The Greenfield Group Ltd.

"Martin" shall mean Société des Anciens Etablissements Martin S.A.

"Prior Action" shall mean *Bodum USA, Inc. v. La Cafetière, Inc*., No. 07 C 6302 (N.D. Ill. Mar. 24, 2009).

"SMF" shall mean Defendants Statement of Material Facts, filed concurrently with this brief.

**INTRODUCTION**

Five years ago, the Honorable Matthew F. Kennelly of this District held, and the Seventh Circuit affirmed, that in 1991 Bodum authorized Defendant Greenfield's continued manufacture and distribution of the Accused Products, the "Classic" and "Optima" French presses. Final Decision at 9 & 15-16. Bodum's authorization was granted in a 1991 Agreement between Bodum and Martin, the third-party from which Bodum obtained its rights to the alleged Chambord trade dress. *Id*. Nothing of legal significance has changed since the Prior Action, only the distributor through which Greenfield markets its products. For example, during the Prior Action, Greenfield sub-contracted its manufacturing to a Chinese factory, a fact Bodum was aware of. Today, Greenfield sub-contracts its manufacturing to the *same* Chinese factory.

Instead of accepting this ruling—and those of courts across the world—Bodum filed the instant action in an attempt to relitigate the identical issues from the Prior Action. Summary judgment is warranted because the prior holdings preclude Bodum's challenge of Greenfield's right to manufacture and distribute the Accused Products, and also Lifetime's, or any third-party's, right to distribute on behalf of Greenfield. If the Court finds that the Prior Action did not squarely address the question of whether Greenfield has a right to use third-party distributors, there is no question of material fact that Bodum acknowledged and authorized Greenfield's use of third-party distributors, such as Lifetime, in the 1991 Agreement.

And even if Bodum had not acknowledged Greenfield's use of third-party distributors to distribute its products, Bodum's claims are barred under well settled law because an authorized first sale of a good exhausts any claim that the subsequent resale of the same good constitutes an infringement.

For each of these reasons, this Court should find that the prior rulings are dispositive of Bodum's claims and grant summary judgment to Defendants.

## BACKGROUND

All of Bodum's Lawsuits against Greenfield, its subsidiaries, and/or its distributors relating to the Accused Products have been unsuccessful. (SMF 30-40.) In 2007, Bodum filed suit in the Northern District of Illinois against La Cafetière, Inc., then the wholly-owned subsidiary of Greenfield that was distributing the Accused Products in the United States. (Prior Action, Dkt. 21.) Bodum asserted claims for trade dress infringement, unfair competition, and violation of the Illinois Uniform Deceptive Trade Practices Act in the Prior Action. (Prior Action, Dkt. 21.) La Cafetière, Inc. filed a motion for summary judgment explaining that Bodum was barred from bringing suit because La Cafetière, Inc.'s actions were authorized by Bodum in the 1991 Agreement. (Prior Action, Dkt. 34.) The Honorable Matthew F. Kennelly of this District granted La Cafetière's motion for summary judgment, holding that the 1991 Agreement permitted La Cafetière's actions. (Final Decision at 16.) The Seventh Circuit Court of Appeals affirmed that judgment. (7th Cir. Op. at 15.)

The 1991 Agreement between Bodum and Martin defines the relationship between Bodum and Greenfield, and the construction of this agreement has been the pivotal factor in the resolution of each of Bodum's Lawsuits against Greenfield. (*See* Bodum's Lawsuits; SMF 13, 34, 48-49.) In the 1991 agreement, Bodum and the stockholders of Martin sold Martin's French Press business and trade dress to Bodum. (*See* Final Decision at 3; SMF 13.) However, the Martin stockholders expressly reserved the right for Household Articles to manufacture and distribute the Accused Products everywhere in the world, except for France. (*See* 7th Cir. Op. at 12; Final Decision at 15-16; SMF 17.)

Household Articles later changed its name to Greenfield. 7th Cir. Op. at 3. La Cafetière, Inc. and La Cafetière Ltd. were wholly owned subsidiaries of Greenfield, but have since changed their names to Knitmesh Technologies Inc. and Household Articles Ltd., respectively. (SMF 65) A portion of La Cafetière, Ltd.'s assets and trade[1] was transferred to La Cafetière (UK) Ltd. (SMF 70-71.) Greenfield elected La Cafetière (UK) Ltd. to be Greenfield's exclusive worldwide (except in France) distributor of certain Greenfield products, including the Accused Products. (SMF 72.) Subsequently, a subsidiary of Lifetime Brands acquired the stock of La Cafetière (UK) Ltd. (SMF 74.) The relationships between Defendants and their respective subsidiaries are depicted in Figure 1.



[1] The trade of La Cafetière Ltd was transferred to La Cafetière (UK) Ltd, but excluded from the transfer were the rights to certain products, including the Accused Products.

Figure 1: Defendants and their subsidiaries

In this case, excluding the declaratory judgment claim, Bodum asserts the exact same claims against Defendants as it asserted against La Cafetière in the Prior Action. (Compare Prior Action, Dkt. 34 with Dkt. 56.) The only—immaterial—difference between the Prior Action and the present law suit is that instead of La Cafetière, Inc. distributing the Accused Products for Greenfield, Lifetime and its subsidiaries are distributing the Accused Products for Greenfield.

---

[1] "Trade" is a British term of art for "business." (SMF 70.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Cetrett*, 477 U.S. 317, 321 (1986); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The court's role in reviewing a summary judgment motion is "to determine based on the record whether there is a genuine issue of material fact requiring trial." *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Summary judgment is appropriate where a defendant establishes as a matter of law that a prior judgment bars plaintiff's claims. *ITOFCA, Inc. v. Mega TransLogistics, Inc.*, 322 F.3d 928, 933 (7th Cir. 2003). The interpretation of a contract is generally a matter to be determined by the Court as a matter of law. *Geier v. Medtronic, Inc.*, 99 F.3d 238, 244 (7th Cir. 1996).

# ARGUMENT

## I. THE NORTHERN DISTRICT OF ILLINOIS AND SEVENTH CIRCUIT COURT OF APPEALS PREVIOUSLY RULED AGAINST BODUM

*Res judicata* and collateral estoppel bar Bodum's suit because the Northern District of Illinois and the Seventh Circuit have already ruled on the issues currently before the Court. *Res judicata* (claim preclusion) and collateral estoppel (issue preclusion) have two common elements: (1) a final judgment on the merits in a prior action; and (2) commonality of parties or their privies between suits. *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993) (explaining *res judicata* requires these elements in addition to identity of the cause of action between both suits); *St. Paul Fire & Marine Ins. Co. v. Downs*, 617 N.E.2d 338, 341 (Ill. 1993) (explaining collateral estoppel requires these two elements in addition to identical issues between the suits). Once those two elements are proven, *res judicata* requires only proof of identity of claims, and collateral estoppel requires only proof that the prior issue is identical to the one presented in the instant suit.

### A. The Prior Action And This Suit Involve The Same Parties or Their Privies

Greenfield and Lifetime represent the same legal interests in this action. "Privity is said to exist between parties who adequately represent the same legal interests." *People ex rel. Burris v. Progressive Land Developers*, 602 N.E.2d 820, 825 (1992) (internal quotation omitted). "It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Id*. The privity analysis for the defendants is straight-forward: Greenfield has the same legal interests in this case as did its wholly-owned subsidiary La Cafetière, Inc. in the Prior Action. (SMF 30, 60; Prior Action, Dkt. 34 and Dkt. 56.) And Lifetime, as Greenfield's current distributor for the Accused Products, is in privity with Greenfield. (SMF 72.)

5

### B. The Prior Action reached a final decision on the merits

In the Prior Action, a final judgment on the merits was reached when summary judgment was granted, holding that the 1991 Agreement authorized Greenfield's manufacturing and distribution of the Accused Products, at that time through La Cafetière. (Final Decision at 16; *see also* FAC at ¶ 36); *Brye v. Brakebush*, 32 F.3d 1179, 1184 (7th Cir. 1994) ("Judgments on the merits can be based on a court ruling on a dispositive motion, such as one for summary judgment . . . .").

### C. Bodum's claims are barred by *res judicata*

Bodum's allegations cannot be relitigated because this case is a replica of the Prior Action. *Res judicata* ensures the finality of judicial decisions and bars vexatious litigation. *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). "*Res judicata* bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). Having already shown a final judgment on the merits in the Prior Action; and the identity of the parties or their privies between the two suits, all that must be shown for res judicata is the identity of the cause of action between both suits. *Herrmann*, 999 F.2d at 226. A claim has "identity" with a previously litigated matter if the claims are based on the same, or nearly the same, factual allegations. *Id.*

Bodum's claims not only arise from a single group of operative facts, three of the four claims are identical to the claims it asserted in the Prior Action. In the Prior Action, Bodum alleged trade dress infringement (Prior Action, Dkt. 34 at 5), common law unfair competition (*id.* at 6), and violation of Illinois Uniform Deceptive Trade Practices Act (*id.* at 6). In the instant action, Bodum again alleges trade dress infringement (FAC at 13), common law unfair

6

competition (*id.* at 14), violation of Illinois Uniform Deceptive Trade Practices Act (*id.* at 15). The identical products are accused in both cases. (SMF 31.)

The fourth claim, for a declaratory judgment, should also be considered the same cause of action because its resolution depends on construction of the same 1991 Agreement that was construed in the Prior Action. (Final Decision at 1, 9 & 15-16.) Illinois uses a transactional test to decide what counts as the same cause of action. According to that test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011).

In the Declaratory Judgment claim asserted as Count IV of Bodum's First Amended Complaint, Bodum asks the Court for a declaration of its rights under the 1991 Agreement. Bodum's declaratory judgment claim does not prevent a finding of *res judicata* because the declaratory judgment claim has identity with the other claims of this suit, as it concerns the same Accused Products and its resolution is also derived from the 1991 Agreement. *See Herrmann*, 999 F.2d at 226. A claim has "identity" with a previously litigated matter if the claims are based on the same, or nearly the same, factual allegations. *Id.*

Additionally, because *res judicata* bars issues which could have been raised in a previous action, *Brzostowski*, 49 F.3d at 338; Bodum's request for declaratory judgment regarding "the right of a third-party to . . . manufacture and distribute" the Accused Products is barred. (FAC at 16.) Greenfield's sub-contracting of its manufacturing right cannot be challenged because Bodum was well aware of Greenfield's sub-contracted manufacturing since the 2008 deposition of Greenfield's Managing Director, Lew Bingham, in the Prior Action. (SMF 78.) Finally,

7

Judge Kennelly of this District already held that Greenfield may use a distributor. (Final Decision at 16.) Therefore, Bodum's claims are barred by res judicata.

### D. Bodum's claims are barred by collateral estoppel

Similarly, Bodum's allegations cannot be relitigated because this case is a replica of the Prior Action and is barred by collateral estoppel. Collateral estoppel also ensures the finality of judicial decisions. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982) (explaining collateral estoppel fulfills "the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions."). Having already shown both (1) that the Prior Action ended in a final judgment and (2) the privity of the parties, Greenfield need only prove that the issue decided in the Prior Action is identical to the one presented in the instant suit. *St. Paul Fire & Marine Ins. Co.*, 617 N.E.2d at 341.

#### 1. The controlling issue of this case has already been decided

The issue decided in the Prior Action is the same issue to be decided in the present suit: whether Greenfield may manufacture and distribute the Accused Products without allegedly infringing Bodum's trade dress. Judge Kennelly held that the 1991 Agreement authorizes Greenfield's manufacturing and distribution, through a distributor, then La Cafetière, Inc., of the Accused Products. (Final Decision at 16.) Unsatisfied with that result, Bodum again asks this Court to determine whether Greenfield is permitted to manufacture and distribute the Accused Products. (SMF 51 (Bodum's counsel explaining, "[i]t's funny how so many smart judges had come to the wrong conclusion.").) Given that the same 1991 Agreement is still the determinative factor for this issue, the previous judgment controls. *Toro*, 370 F. Supp. 2d at 739. This suit is barred.

### 2. The issues of the Prior Action are indistinguishable from the issues of the present case

Save for the declaratory judgment count, all of Bodum's counts are substantively identical between the Prior Action and the instant suit. Bodum's request for declaratory judgment does not prevent a bar of this suit because the declaratory judgment action is indistinguishable from the causes of action already decided in the Prior Action. When two law suits present only one issue, the prior adjudication of the issue bars relitigation. *See St. Paul Fire & Marine Ins. Co.*, 617 N.E.2d at 342. Here, Bodum's Count IV seeks declaratory judgment that a third-party may not manufacture or distribute the Accused Products under the 1991 Agreement. (Dkt. 56 at 16.) Though phrased differently, this count is indistinguishable from the Prior Action's adjudication of whether Greenfield could manufacture and distribute the Accused Products. (Prior Action, Dkt. 34 at 5-6.) The Prior Action held that the 1991 Agreement authorized Greenfield's manufacturing and distribution of the Accused Products, through its distributor at that time, La Cafetière, and held that Bodum's claims failed as a matter of law. (Final Decision at 16.) Although Greenfield now utilizes a different distributor for distribution of the Accused Products, Greenfield is still the party for whom the goods are manufactured and the party that makes the first sale of the goods. Because the issues presented in the Prior Action are indistinguishable from the issues presented now, this suit is barred.[2]

---

[2] Summary judgment on Bodum's Declaratory Judgment claim is also appropriate because it is not ripe for adjudication. Bodum incorrectly alleges in its complaint that "Lifetime acquired Greenfield's distribution rights relating to the Accused Products." First Am. Compl. ¶ 47. The Distribution Agreement does not assign Greenfield's rights. It appoints a distributor. (SMF 73.) Lifetime's subsidiary acquired the distributor's rights, not Greenfield's. Thus, Bodum's request for a declaratory judgment that Greenfield's rights to manufacture and distribute the Accused Products cannot be assigned or otherwise transferred to a third-party (Count IV) should be denied on the grounds that there is no actual case or controversy. No assignment of Greenfield's rights has occurred.

II. **GREENFIELD'S USE OF THIRD-PARTY DISTRIBUTOR IS AUTHORIZED BY THE 1991 AGREEMENT**

Even if this Court finds the issue of Greenfield using a third-party distributor is not precluded through either *res judicata* or collateral estoppel, it should still grant summary judgment that Greenfield's actions are authorized by Bodum in the 1991 Agreement. There can be no dispute that the 1991 Agreement expressly contemplates the use of such third-party distributors. The 1991 Agreement states that "Household Articles Limited is not entitled to use for a period of four (4) years the Importers, Distributors, and Agents which the Company uses and/or has used the last year. (SMF 17.) These importers, distributors, and agents were listed in a schedule attached to a deed signed by Household accepting these conditions, as acknowledged by Bodum's CEO, Jorgen Bodum. (SMF 22, 24.) Though stated in the negative, this part of the 1991 Agreement clearly grants Greenfield the right to use any third-party importers, distributors, and agents that are not listed in Part II of the First Schedule for the first four years following execution of the agreement. (SMF 27.) It naturally follows that, at the expiration of four years, Greenfield is entitled to use any third-party importer, distributor, and agent. (SMF 28.) The 1991 Agreement, therefore, expressly authorizes Greenfield to elect any third-party distributor, including Lifetime.

III. **UNDER THE "FIRST SALE" DOCTRINE, LIFETIME BRANDS, THE SUBSEQUENT SELLER OF THE ACCUSED PRODUCTS, CANNOT BE HELD TO INFRINGE ANY ALLEGED TRADE DRESS OF BODUM**

Bodum's claims against Lifetime fail as a matter of law for the additional reason that Lifetime's distribution of the Accused Products is authorized under the "first sale" or "exhaustion" doctrine. It is well-settled that intellectual property rights are exhausted once the owner authorizes the initial sale of the product embodying that intellectual property—any

subsequent sale by an authorized distributor, therefore, is not an infringement. *See, e.g., Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1075-76 (9th Cir. 1995); *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir. 1992) ("a distributor who resells trademarked goods without change is not liable for trademark infringement.").

This "first sale" doctrine is rooted in the common-law's prohibition of restraints on the alienation of chattels because once sold, the seller does not control the resale or disposal of the goods. *Kirtsaeng v. John Wiley & Sons, Inc.*, ___ U.S. ___, 133 S. Ct. 1351, 1363 (2013) ("The 'first sale' doctrine is a common-law doctrine with an impeccable historical pedigree."). In trademark[3] cases, the typical case applying the first-sale doctrine addresses the first and subsequent sales of the trademark owner's own products bearing its own trademark. Under this scenario, the trademark owner cannot control subsequent distribution of its goods; as long as those goods are genuine, unaltered, and bear a true mark, there is no infringement even if the owner of the mark has not authorized the subsequent sales or objects to the downstream use of its mark. *See Ty Inc. v. Perryman*, 306 F.3d 509, 513 (7th Cir. 2002) ("We do not think that by virtue of trademark law producers own their aftermarkets and can impede sellers in the aftermarket from marketing the trademarked product.").

Similarly, as in the instant situation, where the trademark holder has authorized another to use its trademark or trade dress, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized. *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008) (finding plaintiff's Lanham Act claim failed as a matter of law

---

[3] Claims for infringement of trade dress and claims for infringement of trademark are evaluated identically under Section 43(a) of the Lanham Act. *See, e.g.*, *Two Pesos v. Taco Cabana,* 505 U.S. 763, 773 (U.S. 1992) ("Section 43(a) provides no basis for distinguishing between trademark and trade dress").

where plaintiff had expressly authorized defendants' use of a "substantially similar" design giving defendant a contractual right to use the disputed intellectual property). In the 1991 Agreement, Bodum agreed to the reservation of Greenfield's existing right to use the Chambord design outside of France, although Greenfield cannot use the Chambord or Melior trade names. 7th Cir. Op. at 630-31. Thus, Greenfield's initial sale of the Accused Products into the stream of commerce anywhere outside of France is an authorized "first sale."

Bodum's prior authorization of the upstream "first sale" by Greenfield precludes Bodum from objecting to the downstream sales by Lifetime Brands. Bodum's authorization of the first sale extinguishes Bodum's ability to control who later buys, sells, and uses the Accused Products. *See Sebastian International, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1076 (9th Cir. 1995) ("It is the essence of the 'first sale' doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act."). Under these circumstances, Lifetime's subsequent distribution of the Accused Products cannot be an infringement. *See, e.g., Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998) ("According to the 'first sale' or 'exhaustion' doctrine, a trademark owner's authorized initial sale of its product into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form.").

Similarly, because Lifetime is selling genuine La Cafetière goods pursuant to a valid distribution agreement with the authorized supplier of those goods, there is no possibility of deception or confusion. This would be true even if Bodum, the alleged owner of the trade dress, did not authorize the sale by the distributor. Bodum's authorization of Greenfield's sale of the Accused Products to distributors provides Lifetime with a defense to Bodum's claims. *See, e.g.,*

*Krasnyi Oktyabr, Inc. v. T.G.F. Prods., LLC,* 578 F. Supp. 2d 455 (E.D.N.Y. 2008) (granting defendant's motion for summary judgment under the first sale defense in a trademark case where distributor purchased goods from the same supplier as trademark owner); *Ergowerx Int'l LLC v. Maxell Corp. of Am.,* 18 F. Supp. 3d 430 (S.D.N.Y. April 23, 2014) (dismissing manufacturer's claim for trademark infringement against its former distribution agent, as agent purchased genuine goods pursuant to the distribution agreement, and thus, under first sale doctrine, was not liable for trademark infringement even if re-selling those products in unauthorized markets); *Sturgis v. Target Corp.,* 630 F. Supp. 2d 776 (E.D. Mich. 2009) (plaintiff could not maintain claim for copyright infringement in light of first sale doctrine, since defendant had lawfully obtained the books it sold through a distribution agreement with plaintiff's former publishing company).

Because Greenfield has the right to sell the Accused Products to Lifetime, Greenfield's downstream distributor, Bodum's claims of trade dress infringement are barred.

## IV.  UNDER THE DOCTRINE OF JUS TERTII, BODUM HAS "NO HOPE" OF ESTABLISHING ITS CLAIM OF INFRINGEMENT AGAINST LIFETIME BRANDS

Lifetime Brands likewise has a complete defense to Bodum's allegations of infringement under the doctrine of *jus tertii*. A *jus tertii* defense is one in which a defendant raises the right of a third-party. Although such a defense is generally disfavored in trademark law, there is an exception when the party accused of trademark infringement is in privity with the third-party.[4] In that situation, the doctrine of *jus tertii* permits a defendant to avoid liability for alleged trademark infringement by invoking the trademark rights of the third-party with whom it has a

---

[4] The *jus tertii* defense is generally disfavored because it requires the court to resolve rights of a non-party to the litigation. *United Food Imports, Inc. v. Baroody Imports, Inc.,* Civ. No. 09-2835, 2010 WL 1382342, *4 (D.N.J. Apr. 6, 2010). Here, of course, Greenfield is a party; therefore, the barriers to recognizing the defense are not present.

13

contractual relationship. *Lapinee Trade, Inc. v. Paleewong Trading Co., Inc.*, 687 F. Supp. 1262, 1264 (N.D. Ill.), *aff'd* 876 F.2d 106 (table) (7th Cir. 1989). A distributor may assert the trademark rights of the supplier from whom it purchased the products. *Id.*; *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950(DAB)(DCF), 2005 WL 2148925 at *11 (S.D.N.Y. Sept. 6, 2005), *aff'd* 196 Fed. Appx. 81 (2d Cir. 2006) (finding defendants were authorized to use plaintiff's trademark because defendants had an implied-in-fact contract with a third-party that possessed prior rights to the mark in dispute); *United Food Imports, Inc. v. Baroody Imports, Inc.*, Civ. No. 09-2835, 2010 WL 1382342 (D.N.J. Apr. 6, 2010) (finding defendant was in privity with third-party supplier that had rights to the disputed mark, and could assert the trademark rights of its third-party supplier as an affirmative defense to plaintiff's trademark infringement claims).

In *Lapinee*, for example, a motion for preliminary injunction brought by the Singha Beer trademark owner was denied. 687 F. Supp. at 1263-64. The court held that the distribution agreement between the defendant and a third-party brewery established privity between those parties, "thereby enabling [the defendant] to assert [the brewery's] trademark rights against Lapinee's lawsuit." *Id.* at 1264. The court found that Lapinee had "no hope of establishing its claim of trademark infringement against" the defendant because the defendant's actions were authorized by the third-party brewery. *Id.* at 1265.

Likewise, here, Lifetime and its subsidiary have been appointed the exclusive distributor and sub-distributor of the Accused Products by Greenfield. (SMF 72.) These agreements put Lifetime in privity with Greenfield and provide Lifetime a contractual right to distribute the Accused Products manufactured and sold by Greenfield. Lifetime can assert Greenfield's rights

14

and, therefore, has a complete defense to each of the trade dress infringement and related claims alleged by Bodum.

## CONCLUSION

This law suit is barred because Bodum's claims or the controlling issues of its claims were already adjudicated. The undisputed facts and the controlling law require a finding that Greenfield is authorized to sell the Accused Products to Lifetime, and that Lifetime is authorized to resell these unaltered products to its customers without infringing Bodum's alleged trade dress. Accordingly, this Court should grant summary judgment in favor of defendants on each of Bodum's claims.

Dated: February 17, 2015

Respectfully submitted,

/s/ *R. David Donoghue*
R. David Donoghue
Steven E. Jedlinski
Felisa L. Leisinger
HOLLAND & KNIGHT LLP
131 South Dearborn Street
30th floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312) 578-6666
david.donoghue@hklaw.com
steven.jedlinski@hklaw.com

*Attorneys for The Greenfield Group, Ltd.*

/s/ *Jodi Rosen Wine*
Jodi Rosen Wine (IL 6209883)
jwine@nixonpeabody.com
Deanna R. Kunze (née Swits) (IL 6287513)
dkunze@nixonpeabody.com
NIXON PEABODY LLP
300 South Riverside Plaza, 16th Floor
Chicago, IL 60606

                Tel: 312-425-3900
                Fax: 312-425 3909

                *Attorneys for Defendant Lifetime Brands, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2015, I filed the above paper entitled **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT THAT BODUM IS PRECLUDED FROM BRINGING THIS LAWSUIT** with the Clerk of Court using CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ *Jodi Rosen Wine*
Jodi Rosen Wine