UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BODUM USA, INC., | ) |
| Plaintiff, | ) ) ) Case No. 14-cv-3365 |
| v. | ) ) Judge John W. Darrah |
| LIFETIME BRANDS, INC. and THE GREENFIELD GROUP LTD., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Bodum USA, Inc. filed a First Amended Complaint, alleging: (1) trade dress infringement under 15 U.S.C. § 1125; (2) common-law unfair competition; and (3) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq*. The First Amended Complaint also seeks a declaratory judgment regarding the non-competition exception in a 1991 agreement between Bodum and certain shareholders. Defendants Lifetime Brands, Inc. and The Greenfield Group Ltd. (collectively, the "Defendants") filed a Motion for Summary Judgment. For the reasons discussed below, Defendants' Motion for Summary Judgment [64] is denied.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Local Rule 56.1(b)(3)(C) permits the nonmovant to submit "any additional facts that require the denial of

summary judgment. . . ." To overcome summary judgment, "the nonmoving party must file a response to each numbered paragraph in the moving party's statement." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the nonmovant's response only provides extraneous or argumentative information, the response will fail to constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).

Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). If the responding party fails to comply with Rule 56.1, its "additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted." *Gbur v. City of Harvey, Illinois*, 835 F. Supp. 2d 600, 606 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.

**BACKGROUND**

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

A French-press style coffee maker is a non-electric, manually-operated coffee maker that is usually comprised of a cylindrical flask or carafe, a handle affixed to the cylinder, a base, and

a lid with a piston or plunger. (Def's SOF ¶ 5.) On August 8, 1991, Bodum Holding A/S acquired all outstanding stock in Société des Anciens Establissements Martin S.A. ("Martin"). (Def's SOF ¶¶ 10, 13.) The stock purchase agreement (the "1991 Agreement") included Martin's rights to the "Chambord" design for a French press, as well as the trademarks "Chambord" and "Melior." (*Id.* at ¶ 13.) Nine individual stockholders of Martin and Bodum Holding A/S (a corporate affiliate of Plaintiff) were parties to the 1991 Agreement. (*Id.* at ¶ 14.) In the 1991 Agreement, "Stockholder" is defined to include the nine individual stockholders of Martin, "Buyer" refers to Bodum Holding A/S, and "Company" refers to Martin. (*Id.* at ¶ 15.) At the time of the agreement, Martin's majority stockholder was Louis-James de Viel Castel. (*Id.* at ¶ 16.) Article 4 of the 1991 Agreement states:

> In consideration of the compensation paid to Stockholder for the stocks of the Company, Stockholder guarantees, limited to the agreed compensation, see Article 2, that he shall not - for a period of four (4) years - be engaged directly or indirectly in any commercial business related to manufacturing and/or distributing of the Company's products and/or any other business in which the Company has been engaged, other than after mutual agreement as an employee of, or advisor to Buyer, a subsidiary, or an affiliated company. . . .
>
> Notwithstanding Article 4, Buyer agrees that Stockholder through Household Articles Limited, a limited company incorporated and registered in the United Kingdom, can manufacture and distribute any products similar to the Company's products outside of France. It is expressly understood that Household Articles Limited is not entitled, directly or indirectly, to any such activity in France, and that Household Articles Limited furthermore is not entitled, directly or indirectly, globally to manufacture and/or distribute coffeepots under the trade marks and/or brand names of "Melior" and "Chambord," held by the Company. Stockholder agrees that Household Articles Limited is not entitled to use for a period of four (4) years the importers, distributors, and agents which the Company uses and/or has used the last year. Any violation of these obligations will constitute a breach of Stockholder's obligation according to Article 4.

(*Id.* at ¶ 17.) The 1991 Agreement provides that any dispute concerning the Agreement shall be determined according to French law. (*Id.* at ¶ 18.) At the time of the 1991 Agreement, Viel Castel was also the chairman of Household Articles Limited ("Household"). (*Id.* at ¶ 19.)

3

Bodum previously brought suit against La Cafetière, Inc. in this District, asserting the same first three causes of action asserted in the present case. (*Id.* at ¶ 30.) On summary judgment, the district court held the 1991 Agreement authorized Household to distribute products utilizing the Chambord trade dress anywhere outside of France so long as Household did not use the names Melior or Chambord. (*Id.* at ¶ 39.) The Seventh Circuit affirmed the District Court's Opinion on appeal. (*Id.* at ¶ 40.)

In 1995, Household formed a United States corporate entity, La Cafetière, Inc., which was dissolved in 2001. (*Id.* at ¶ 56.) Household was renamed "The Greenfield Group Ltd." in March 2004. (*Id.* at ¶ 57.) In 2006, Greenfield formed a United States corporation, again named La Cafetière, Inc. (*Id.* at ¶ 59.) Greenfield is located in the United Kingdom and is 100 percent owned by a Belgian entity, which is wholly owned by Viel Castel and his wife. (*Id.* at ¶¶ 62-63.) La Cafetière, Ltd. and La Cafetière, Inc. are both wholly-owned subsidiaries of Greenfield.[1] (*Id.* at ¶ 65.)

Lifetime is based in New York and is a provider of kitchenware, tableware, and other home products to U.S. retailers. (*Id.* at ¶ 66.) Lifetime is the parent company of Creative Tops Holding Limited, a UK Corporation. (*Id.* at ¶ 67.) Creative Tops Holding Limited is the parent to La Cafetière (UK) Ltd. and Creative Tops Limited, both of which are UK corporations. (*Id.* at ¶ 68.) On March 7, 2014, Greenfield executed a Business Purchase Agreement, whereby certain assets and the business of designing and/or manufacturing and/or marketing and/or distributing certain of Greenfield's products was transferred to a newly established subsidiary, La Cafetière (UK) Ltd. (*Id.* at ¶ 70.) The Business Purchase Agreement excluded any assets or intellectual property rights connected to the La Cafetière "Classic" or "Optima" products

---

[1] Both have now changed their names but, for the sake of clarity, will continue to be referred to as their previous names.

(collectively, the "Accused Products"). (*Id.* at ¶ 71.) Following the transfer, Greenfield appointed La Cafetière (UK) Ltd. as the exclusive worldwide distributor of the Accused Products. (*Id.* at ¶ 72.)

On March 12, 2014, Creative Tops Holdings Limited, purchased all shares of La Cafetière (UK) Ltd. from Greenfield. (*Id.* at ¶ 74.) Also on that day, Greenfield and Viel Castel separately executed Deeds of Assignment in favor of La Cafetière (UK) Ltd. (Pl's SOF ¶ 33.) The Deeds of Assignment transfer "any and all right, title and interest in and to the" intellectual property rights related to the Accused Products and are held in escrow until certain preconditions come to pass. (*Id.*) The Deeds of Assignment become effective and are released from escrow in the event that the Distribution Agreement is terminated by La Cafetière (UK) Ltd. or after a period of four years, or another period as agreed to in writing by the parties to the Deeds. (*Id.*)

On June 30, 2014, La Cafetière (UK) Ltd. entered into a Sub-Distributor Agreement with Lifetime, which appointed Lifetime as its sole distributor in the United States. (Def's SOF at ¶ 76.) On September 30, 2014, La Cafetière (UK) Ltd. transferred its business to Creative Tops Limited. (*Id.* at ¶ 77.) Greenfield then entered into a Deed of Novation, which transferred all of La Cafetière (UK) Ltd.'s rights and obligations to Creative Tops. (*Id.*) The Accused Products are still manufactured for Greenfield at the Yonglian Silverware Company in GuangHou, China. (*Id.* at ¶¶ 78-79.)

## LEGAL STANDARD

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5

Fed. R. Civ. P. 56. Courts are required to view all facts and make reasonable inferences "in the light most favorable to" the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A genuine dispute of material facts exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To overcome a motion for summary judgment, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The nonmovant must show "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248).

## ANALYSIS

Defendants argue that their Motion for Summary Judgment should be granted on four grounds: (1) Plaintiff's claims are precluded by *res judicata* and collateral estoppel; (2) the 1991 Agreement authorized Greenfield's use of a third-party distributor; (3) under the "First sale" doctrine, a subsequent seller of accused products cannot be held to infringe trade dress; and (4) Lifetime's sale of the Accused Products is protected under the doctrine of *jus tertii*.

### *Res Judicata and Collateral Estoppel*

*Res judicata* applies when the following three circumstances are present: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bernstein v. Bankert*, 702 F.3d 964, 995 (7th Cir. 2012) (quoting *Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996)). *Res judicata* bars a party from alleging certain claims in federal court that the party could have raised in a prior suit litigated between the same

6

parties. *See Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (internal citation and quotation marks omitted).

Collateral estoppel, or issue preclusion, prevents relitigation of issues decided in a prior proceeding involving the same parties. "For collateral estoppel to apply, '(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.'" *Matrix IV, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)).

A cause of action consists of "'a single core of operative facts' which give rise to a remedy." *Johnson*, 641 F.3d at 874 (quoting *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995)). "[A] claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Bernstein*, 702 F.3d at 995 (quoting *Kratville*, 90 F.3d at 197). The determination of whether there is identity between parties in later and prior suits involves a fact-specific inquiry into the particular circumstances of a case. *See id.* at 995 (internal citations and quotations omitted). The parties do not dispute that there was a final judicial determination on the merits.

Defendants argue that this case is precluded because the only difference between the prior action and the present action is that Lifetime and its subsidiaries are now distributing the Accused Products instead of La Cafetière, Inc. Plaintiff responds that *res judicata* and collateral estoppel are inapplicable because the present action involves different parties and changed circumstances. There is not a single core of operative facts between the current action and the

7

previous action. In the previous action, Greenfield was distributing the Accused Products through wholly-owned subsidiaries. *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 625 (7th Cir. 2010) ("La Cafetière, Inc., was incorporated in Illinois in 2006 to serve as the distributor of Household's products in the United States."); *See also* (Def's SOF, ¶ 65.) Now, the Accused Products are distributed by La Cafetière (UK) Ltd., which was purchased by Creative Tops Holdings Limited. (Def's SOF, ¶¶ 70-72, 74.) The relationship between Greenfield and its chosen distributor has fundamentally changed. Therefore, this suit is not precluded by *res judicata* or collateral estoppel.

*1991 Agreement*

Defendants argue that the 1991 Agreement authorized Greenfield's use of a third-party distributor. The 1991 Agreement provides that Viel Castel, and thereby Greenfield, "can manufacture and distribute any products similar to [Bodum's] products outside of France." (Def's SOF, ¶ 17.) Bodum contends that Greenfield's agreement with Lifetime Brands is a *de facto* assignment of their Greenfield's intellectual property rights and manufacturing rights.

As the Seventh Circuit held, the 1991 Agreement "allows [Greenfield] to sell the L a Cafetière design anywhere except France - provided that it does not use the Chambord or Melior names (which [Greenfield] has never done) and does not use Martin's supply channels for four years (a promise [Greenfield] kept)." *Bodum USA, Inc.*, 621 F.3d at 630. "[A]n activity authorized by contract cannot constitute a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact,' violative of the Lanham Act." *Bodum USA, Inc. v. La Cafetiere, Inc.*, No. 07 CV 6302, 2009 WL 804050, at *3 (N.D. Ill.

8

Mar. 24, 2009) *aff'd*, 621 F.3d 624 (7th Cir. 2010) (citing *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1035 (D.Minn. 2003)). The relevant language in the 1991 Agreement provides:

> In consideration of the compensation paid to Stockholder [Viel Castel] for the stocks of [Martin,] Stockholder guarantees, limited to the agreed compensation, see Article 2, that he shall not - for a period of four (4) years - be engaged directly or indirectly in any commercial business related to manufacturing or distributing [Martin's] products . . .
>
> Notwithstanding Article 4 [Bodum Holding] agrees that Stockholder through [Greenfield] . . . can manufacture and distribute any products similar to [Martin's] products outside of France. It is expressly understood that [Greenfield] is not entitled, directly or indirectly, to any such activity in France, and that [Greenfield] furthermore is not entitled, directly or indirectly, globally to manufacture and/or distribute coffeepots under the trade marks and/or brand names of "Melior" and "Chambord," held by [Martin]. Stockholder agrees that [Greenfield] is not entitled to use for a period of four (4) years the importers, distributors, and agents which [Martin] uses and/or has used the last year. Any violation of these obligations will constitute a breach of Stockholder's obligation according to Article 4.

(Def's SOF, ¶ 17.)

"People are free to use contracts to allocate rights to products' designs." *Bodum USA, Inc.*, 621 F.3d at 631 (7th Cir. 2010) (citing *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979)). Indeed, "trademark law creates a presumption that, in the absence of an assignment of trademark rights, a foreign manufacturer retains all rights to a trademark even after licensing the use of the trademark to an exclusive U.S. distributor." *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 882 (7th Cir. 1997) (citing *Global Maschinen Gmbh v. Global Banking Systems, Inc.*, 227 U.S.P.Q. 862, 866 (T.T.A.B. 1985); 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:8 (4th ed. 1997)).

Plaintiff argues that the agreements between Greenfield, Lifetime, La Cafetière (UK) Ltd., and Creative Tops amount to an assignment of the intellectual property. "[O]wnership of trademarks impliedly passes with ownership of a business, without express

9

language to the contrary." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013) (citing *Am. Dirigold Corp. v. Dirigold Metals Corp.*, 125 F.2d 446, 454 (6th Cir. 1942), and *Plitt Theatres, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 697 F. Supp. 1031, 1034-35 (N.D.Ill. 1998)). There is no express assignment of trademark rights from Greenfield to Lifetime or Creative Tops.

There is express language to the contrary, as the Business Purchase Agreement excludes contracts in relation to the Accused Products and the intellectual property of the Accused Products. (Bennett Decl., Exh. 8 at pp. 31, 45.) The Asset Purchase Agreement forbids Viel Castel and Greenfield from designing, developing, marketing, selling or distributing the Accused Products within or without North America for three years, and the Accused Products may only be sold to Lifetime with certain restrictions. (Pl's SOF, ¶¶ 19-20.) Also, Greenfield is still manufacturing the products and is distributing them through Lifetime.

However, the Deeds of Assignment transfer "any and all right, title and interest in and to the" intellectual property rights related to the Accused Products. (*Id.*) The Deeds of Assignment become effective and are released from escrow in the event that the Distribution Agreement is terminated by La Cafetière (UK) Ltd. or after a period of four years, or another period as agreed to in writing by the parties to the Deeds. (*Id.*) But there is no way for the Deeds of Assignment to return to Greenfield even if La Cafetière (UK) Ltd. terminates the Distribution Agreement. "Even though a contract states that it is a 'license,' a court will not be governed by form, and the contract will be upheld as an assignment of trademark rights if that is its actual legal effect." 3 McCarthy on Trademarks and Unfair Competition § 18:5 (4th ed.). There is a question of fact as to whether the agreements between Greenfield, La Cafetière (UK) Ltd., and Creative Tops

amount to an assignment of intellectual property rights and whether such a transaction is authorized by the 1991 Agreement.

*"First Sale" Doctrine*

Defendants also argue that Plaintiff's claim against Lifetime fails because Lifetime's distribution of the Accused Products is authorized under the "first sale" doctrine. Under the "first sale" doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Standard Process, Inc. v. Banks*, 554 F. Supp. 2d 866, 869 (E.D. Wis. 2008)) (citing *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924); *see also* Restatement(Third) of Unfair Competition § 24 cmt. b (2008) ("[T]rademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce.")). Plaintiff argues that the "first sale" doctrine does not apply because the first sale of the product, from Greenfield to La Cafetière (UK) Ltd., is not authorized by the 1991 Agreement. The Asset Purchase Agreement forbids Viel Castel and Greenfield from designing, developing, marketing, selling or distributing the Accused Products within or without North America for three years, and the Accused Products may be sold only to Lifetime with certain restrictions. (Pl's SOF, ¶¶ 19-20.) As discussed above, it is not clear whether Greenfield's distribution agreement with La Cafetière (UK) Ltd. is authorized by the 1991 Agreement. Therefore, there is a question of fact as to whether the "first sale" doctrine is applicable.

*Jus Tertii*

Defendant Lifetime asserts that they have standing to assert Greenfield's rights under the doctrine of *jus tertii*. *Jus tertii* is "a claim that a third party possesses trademark rights superior to the plaintiff." *Lapinee Trade, Inc. v. Paleewong Trading Co.*, 687 F. Supp. 1262, 1264 (N.D. Ill. 1988) *aff'd*, 876 F.2d 106 (7th Cir. 1989). Normally, a j*us tertii* defense is not allowed in a trademark case. (*Id.*) (citing 2 J.T. McCarthy, Trademarks and Unfair Competition § 31:39, at 674 (2d ed. 1984)). Nonetheless, the courts have recognized an exception to that general prohibition when "a third party permits a defendant to use a trademark as part of a contractual arrangement." (*Id.*) There is a question of fact regarding the contractual arrangement and whether intellectual property rights were validly assigned. Therefore, *jus tertii* is not applicable at this point.

*Declaratory Judgment*

Plaintiff also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, that the 1991 Agreement does not authorize the transfer of a Martin stockholders' ability to manufacture and distribute similar products to a third party. To the extent that Plaintiff claims the current arrangement has transferred Greenfield's rights to the intellectual property in the Accused Products to Lifetime, this issue has been discussed above. Defendants, in their reply brief, also argue that a declaratory judgment is not ripe. Normally, "[a]rguments that are raised for the first time in a reply brief are waived." *Damato v. Sullivan*, 945 F.2d 982, 988, n. 5 (7th Cir. 1991) (quoting *Ippolito v. WNS, Inc.*, 864 F.2d 440, 455 n. 12 (7th Cir. 1988)). However, ripeness is a justiciability doctrine drawn from Article III limitations on judicial power and prudential reasons for declining jurisdiction, which may be considered

*sua sponte*. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003). As previously discussed, there has been no actual transfer of Greenfield's intellectual property rights in the Accused Products. And while there is a mechanism for those rights to transfer to La Cafetière (UK) Ltd., the circumstances allowing for that transfer have not occurred yet.

"[R]ipeness determinations depend on the 'fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Metro. Milwaukee Ass'n of Commerce v. Milwaukee Cnty.*, 325 F.3d 879, 882 (7th Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Hardship can be demonstrated by showing "either that: (1) [the transfer of the intellectual property] is certain, only delayed, . . . ; or (2) even though [the transfer] is not certain, the mere threat of future [transfer] has a present concrete effect on [Plaintiff's] day-to-day affairs and irremediably adverse consequences would flow from a later challenge." *Metro Milwuakee*, 325 F.3d at 882 (internal citations and quotations omitted). There is a ripe question as to whether the agreements between Greenfield, La Cafetière (UK) Ltd., and Creative Tops amount to an assignment of intellectual property rights and, if so, whether the 1991 Agreement authorizes an outright transfer of intellectual property to a third-party.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [64] is denied.

Date: _____ June 24, 2015 _____   /s/ _____
JOHN W. DARRAH
United States District Court Judge